UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2007 JUN 27 A 11: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

JEFFREY R. SMITH,                                    )
        Plaintiff                          )        CIVIL ACTION NO.: 07-
                               )
v.                                                   )
                               )
GOLDEN ARCH ENTERPRISES, L.L.C.                      )
        Defendant                          )

## COMPLAINT

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III

of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The plaintiff, Jeffrey R. Smith

brings this cause against Golden Arch Enterprises, L.L.C. ("Golden Arch ") and alleges as

follows:

## PARTIES

1.     The plaintiff, Jeffrey R. Smith. is a resident of the Commonwealth of Massachusetts, and

is disabled and substantially limited in performing one or more of major life activities, including

but not limited to walking, standing, grabbing, grasping, and/or pinching. He always uses an

electric wheelchair for mobility purposes. His access to the defendant's restaurant and/or his full

and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations offered therein was denied and/or limited because of these disabilities and will

be denied and/or limited in the future unless and until the defendant is compelled to remove the

physical barriers to access and ADA violations which exist at the restaurant, including those set

forth in this Complaint.

2.     Mr. Smith is a member of an advisory board to the Boston Red Sox on the subject of

access for persons with disabilities to Fenway Park. He has traveled to Swansea to speak to high

school students on behalf of the Brain Injury Association of Massachusetts. Mr. Smith spoke at the high school on the morning of May 15, 2007.

3. Mr. Smith is a qualified individual with disabilities within the meaning of all applicable statutes including the ADA.

4. The defendant, Golden Arch, is a duly organized Massachusetts corporation with a usual place of business at 631Grand Army Highway, Swansea, Commonwealth of Massachusetts 02777. The defendant has a principal office at 1332 Fall River Avenue, Seekonk, Massachusetts 02771. The defendant owns and operates a MacDonald's restaurant at 631 Grand Army Highway, Swansea, Massachusetts.

5. The defendant's restaurant is a place of public accommodation subject to the requirements of the Title III of the ADA.

6. The defendant, Golden Arch, is a private entity that owns and operates a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181(7)(E).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

7. Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities. and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

8. Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

2

9. After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

10. In signing the ADA into law on July 26, 1990, President George H.W. Bush stated:

"Last year, we celebrated a victory of international freedom. Even the strongest person couldn't scale the Berlin Wall to gain the elusive promise of independence that lay just beyond. And so, together we rejoiced when that barrier fell. And now I sign legislation which takes a sledgehammer to another wall, one which has for too many generations separated Americans with disabilities from the freedom they could glimpse, but not grasp. Once again, we rejoice as this barrier falls for claiming together we will not accept, we will not excuse, we will not tolerate discrimination in America."

11. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

12. In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

13. The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

14. A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

3

15.     This case arises out of the defendant's unlawful practice of denying meaningful and equal

access to the facilities, goods and services offered at MacDonaid's, 631 Grand Army Highway,

Swansea, Massachusetts to persons with disabilities, such as the plaintiff, Jeffrey R. Smith.

## JURISDICTION AND VENUE

16.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and §

1343 in that this action arises under the laws of the United States and the defendant is subject to

personal jurisdiction.

17.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the

District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

18.     On May 15, 2007, Mr. Smith attempted to patronize the defendant's MacDonald's

restaurant but could not do so because of his physical disabilities, his use of a wheelchair, and

the barriers to wheelchair access that exist in the facility.

19.     Mr. Smith would have patronized MacDonald's, but for its lack of a wheelchair-

accessible entrance.

19A.    Golden Arch has discriminated against Smith by failing to comply with the ADA barrier

removal regulations. A specific, although not exclusive, list of physical barriers, dangerous

conditions, and ADA violations which preclude Mr. Smith from using the restaurant and/or full

and equal enjoyment of the goods, services, privileges, and advantages, and/or accommodations

of it include:

a. There is not an accessible route connecting all public areas, elements, and spaces at the

restaurant. ADAAG 4.3.

4

b. There is no accessible route connecting the building entrance to the street, sidewalk, and/or public transportation stop. ADAAG 4.3.2.

c. Doors at the restaurant are inaccessible. ADAAG 4.13 and 4.14.

d. Doors at the restaurant have inaccessible door hardware. ADAAG 4.13.9.

e. There are counters that are too high and inaccessible. ADAAG 7.2.

f. There are restrooms at the restaurant that are inaccessible due to the following: the doors are inaccessible; the entrance is inaccessible; there is insufficient clear floor space and turning space for wheelchairs; the lavatory is inaccessible; the water closets are inaccessible and the dispensers are inaccessible. ADAAG 4.22.

g. There is no means of emergency egress or area of rescue assistance. ADAAG 4.3.11.

h. There is seating that does not comply with 4.32 of the ADAAG.

19B.    The above listing is not considered all inclusive of all barriers, dangerous conditions, or ADA violations encountered by Mr. Smith, which exist at the restaurant. Mr. Smith requires an inspection of the restaurant in order to determine all of the discriminatory conditions violating the ADA.

20.     Mr. Smith wishes to patronize the defendant's McDonald's in the future as he expects to be invited to speak to high school students in Swansea again, but he continues to be denied meaningful access to the defendant's MacDonald's due to the architectural barriers to wheelchair access that continue to exist there.

21.     The defendant has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of MacDonald's as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to

5

the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

22.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA. The regulations are codified at 28 C.F.R. Part 36. The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

23.     With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2).

24.     All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible. For example, if during renovations a doorway is being relocated, the new doorway must be wide enough to meet the new construction standard for accessibility. When alterations are made to a primary function area, an accessible path of travel to the altered area must also be provided. The bathrooms, telephones, and counters serving that area must also be made accessible. These additional accessibility alterations are required to the extent that the added accessibility costs do not exceed 20% of the cost of the original alteration.

25.     Even if the defendant's MacDonald's restaurant never was an altered facility within the meaning of the ADA, the defendant is required to remove architectural barriers to wheelchair access to the extent that such modifications would be "readily achievable."

26.     42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

6

27.    Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

28.    The "readily achievable" requirement is based on the size and resources of the business. Larger businesses with more resources are expected to take a more active role in removing barriers than small businesses.

29.    The ADA also recognizes that economic conditions vary. When a business has resources to remove barriers, it is expected to do so; but when profits are down, barrier removal may be reduced or delayed.

30.    Barrier removal is an ongoing obligation. A business is expected to remove barriers as resources become available. A business is expected to set aside resources and save to implement barrier removal plans.

31.    Despite having resources available for renovations, the defendant never devoted any funds to readily achievable removal of architectural barriers at MacDonald's.

32.    Founded in 1919, the National Restaurant Association ("NRA") is the leading business association for the restaurant industry. It represents more than 380,000 member restaurant establishments. The National Restaurant Association has published information to educate its members on how to comply with the ADA. (EXHIBIT A).

33.    Mr. Smith intends to return to MacDonald's as soon as the architectural barriers to wheelchair access are removed.

34.    Mr. Smith would like to patronize the defendant's MacDonald's, but he does not wish to engage in the futile gesture of trying to do so and of attempting to gain access to each and every feature of it because he knows that barriers to wheelchair access exist there and the defendant has not and does not intend to remove architectural barriers to access there.

7

35.     Mr. Smith has suffered an injury in fact as a result of the defendant's non-compliance with the ADA. His desire to return to the defendant's MacDonald's restaurant creates a real and immediate threat of future injury.

36.     The injunctive relief requested below will redress Mr. Smith's injury.

37.     On information and belief, Mr. Smith alleges that there are other ADAAG violations present within the defendant's MacDonald's that will be more fully alleged upon discovery and further inspection.

38.     The defendant has not complied with accessibility standards to the maximum feasible.

39.     By maintaining barriers to wheelchair access, Golden Arch failed to comply with ADA and access requirements for areas of new construction or alteration.

40.     The actions and initiatives that Golden Arch has failed to undertake in order to make its restaurant accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendant.

41.     The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiff has no adequate remedy at law.

        WHEREFORE, The plaintiff requests that the Court will order the defendant to alter MacDonald's to make it readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiffs appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

8

Respectfully submitted,
The Plaintiff, JEFFREY R. SMITH,

By his Attorneys,

_Nicholas S. Guerrera_

Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

Dated:    6 - 26 - 07

_Edward N. Garno_

Edward N. Garno, BBO#564378
592 Essex Street
Lawrence, MA 01840
(978) 687-7805

Dated:    6 - 26 - 07

9



# Americans with Disabilities Act, Title III: Making Your Restaurant Accessible to Customers with Disabilities

An overview of the ADA
Accessibility standards for businesses
Your self-inspection checklist
• Getting into the restaurant
• Access to foodservice areas
• Access to public restrooms
• Other access
Resources

Check out the National
Restaurant Association's
Legal Problem Solver for
Restaurant Operators for
summaries of all federal laws
affecting restaurateurs.

**Important Note**
The information below is intended only to inform and not to be a substitute for the reader's
seeking legal counsel. Any information given here should be examined by the reader's
attorneys as to such information's applicability.

**An overview of the ADA**
Since 1990, the federal Americans With Disabilities Act (ADA) has guaranteed civil-
rights protection for persons with disabilities. Two of the law's five titles apply to
restaurants:

- **The ADA's Title I**, enforced by the EEOC, is designed to protect **employees
  or job applicants** with disabilities or perceived disabilities. Title I of the ADA
  prohibits employers from discriminating against any individual with a disability
  who, with or without reasonable accommodation, can perform the essential
  functions of a job.
- **The ADA's Title III**, enforced by the U.S. Department of Justice, is designed
  to protect **customers** with disabilities. Title III of the ADA prohibits businesses
  — including foodservice operations — from discriminating against customers
  with disabilities or perceived disabilities.

Read on for more information how restaurants can comply with Title III of
the ADA and thus open their doors to more customers with disabilities.

Resources

**Accessibility standards for businesses**

Title III of the ADA has different requirements depending on when a
restaurant facility first opened and when any major renovations were done
on the facility.

▼ **Federal agencies & ADA**

**U.S. Justice Department:**
Makes sure businesses are
accessible to customers with
disabilities. Web site.

• Any facility opening for first occupancy after January 26, 1993, must meet
a fairly strict accessibility standard — being "readily accessible" to people
with disabilities. That standard applies to everything from parking spaces to
entranceways to restrooms.

**U.S. Equal Employment
Opportunity Commission:**
Enforces ADA rules banning
job discrimination based on
disability. Web site

• Facilities that opened prior to the 1993 cutoff are not required to provide
full accessibility. However, any major renovations on older construction —
that took place after January 26, 1992 — must make the altered areas
readily accessible to individuals with disabilities, to the maximum extent
feasible.

**Access Board**. Sets specs for
accessibility.

• The ADA also requires facilities that opened prior to the 1993 cutoff to

**EXHIBIT A**

remove architectural and communication barriers when such changes are "readily achievable." "Readily achievable" changes are those that are easy to carry out without much difficulty or expense. Some readily achievable ways to remove barriers may include installing ramps, repositioning paper-towel dispensers and widening doors. What's readily achievable for one restaurant may not be for another, depending on factors such as the restaurant's layout and revenue.

### Self-inspection checklist

Use the checklists below to see whether your operation meets the ADA's standards for "ready accessibility."

Note: The standards used here are drawn from the ADA Accessibility Guidelines (ADAAG), developed by a governmental advisory group known as the "Access Board" (officially, the Architectural and Transportation Barriers Compliance Board). In late 1999, the Access Board proposed nearly 800 revisions to the ADAAG; these changes are still pending. Read the National Restaurant Association's issue brief on the proposed ADAAG changes.

#### 1. Getting into the restaurant

Customers with disabilities should be able to arrive on the site, approach the building, and enter the restaurant as conveniently as everyone else. At least one path of travel should be safe and accessible for everyone, including people with mobility or visual disabilities. Items to check for include:

- If you have on-site parking, are there sufficient designated and marked accessible parking spaces? Each accessible space should be at least 8-feet wide with a marked 5-foot wide minimum level access aisle next to it.
- Are the accessible spaces the ones closest to the accessible entrance, and are they marked with the international symbol of accessibility?
- Can at least one in every eight accessible spaces accommodate a lift-equipped van?
- Is there a continuous, unobstructed path of travel from on-site parking, drop-offs, bus stops and public sidewalks to the restaurant entry that is free of stairs? The path should be at least 36 inches wide.
- Is the path of travel free of cracks, bumps and other surface irregularities that could cause someone to trip or fall?
- Do curbs along the path of travel have curb cuts or ramps?
- Are there continuous handrails at both sides of all stairways?
- Are ramp slopes safe and convenient for people using wheelchairs?
- Are ramp surfaces stable, firm and nonslip?
- Do all ramps longer than 6 feet have sturdy and secure railings on both sides?
- Are at least 50 percent of all public entrances accessible? For example, do entrance doors have at least a 32-inch clear opening, and are door handles no higher than 48 inches and possible to operate by someone with limited use of his or her hands?
- If any customer entrance is not accessible, is it posted

with a visible sign that clearly indicates the location of the accessible entrance?

## Access to foodservice areas

The layout of the restaurant should, as much as possible, allow people with disabilities to participate in and enjoy their dining experience in the same manner as other customers. Remove barriers to waiting, food-ordering, self-service and dining areas if doing so is readily achievable. Modifications that result in significant loss of sales space are not required. Items to check for include:

- Are pathways to foodservice areas free of stairs?
- Are all aisles and pathways at least 36 inches wide?
- Are there clear floor areas located throughout for a person using a wheelchair to reverse direction?
- Is the path of travel free of protuding objects that pose hazards for people with visual disabilities?
- At counters and bars that exceed 34 inches in height, is there also a portion of the main counter that is between 28 and 34 inches high and at least 60 inches in length? Or is service available at accessible tables or counters within the same area?
- Are queues or serpentine waiting lines at ordering counters at least 36 inches wide to allow passage by people who use wheelchairs?
- Is there a portion of food-ordering counters that is no more than 36 inches high, or is there space at the side for passing items to customers who have difficulty reaching over a high counter?
- Are at least 50 percent of all self-service shelves at foodservice lines within reach of a person using a wheelchair?
- Are self-service shelves and dispensing devices for tableware, dishes and condiments within reach of a person using a wheelchair?

## Access to public restrooms

When restrooms are open to the public, they should be accessible to customers with disabilities. Items to check for include:

- Is the path of travel to the public restroom at least 36 inches wide?
- If there are stairs leading to public restrooms, are there continuous handrails on both sides of the stairs?
- Are there signs at inaccessible restrooms that give directions to accessible restrooms?
- Are there raised lettering and Braille signs identifying restrooms?
- Is the restroom doorway at least 32 inches wide?
- Is at least one accessible toilet stall?
- At accessible toilets, are there grab bars behind and on the side wall nearest the toilet, or on both side walls of a 36-inch wide alternative toilet stall?
- Is the faucet control easy to grasp with one hand, and can it be operated without tight grasping, tight pinching or twisting of the wrist?
- Is at least one of each control, dispenser, receptacle or other equipment located within reach of a person using a wheelchair?

## Other access

When amenities such as public telephones and drinking fountains are provided to the general public, they should also be accessible to customers with disabilities. Items to check for include:

- Is the path of travel to the public telephones and drinking fountains at least 36 inches wide?
- Is there clear floor space of at least 30 to 48 inches in front of the phone?
- Is the phone hearing-aid compatible and adapted with volume control?
- If drinking fountains are provided, is there one that has both high and low spouts so that it is accessible to people who use wheelchairs and to those who have difficulty bending or stooping?

**Resources**
Visit the U.S. Department of Justice's ADA site.

**Related Links on This Site**

The ADA After a Decade: The Industry's Efforts to Provide Accessible Hospitality
(*Restaurants USA*, September 2000)

NRA Position on Proposed Changes to ADA Accessibility Guidelines (National Restaurant Association Issue Brief, 2001-2002 U.S. Congress)



©Copyright 2007 National Restaurant Association. 1200 17th St., NW :. Washington, DC 20036 ph 202-331-5900

# United States District Court

_____ DISTRICT OF _____

Dino N. Theodore

## SUMMONS IN A CIVIL CASE

**V.**

CASE NUMBER:

Winter Place, L.L.C.

TO: (Name and address of defendant)

Winter Place, L.L.C.
3 Winter Place
Boston, MA 02108

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Nicholas S. Guerrera, Esq.
Shaheen Guerrera & O'Leary, LLC
820A Turnpike Street
North Andover, MA  01845

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

SARAH A. THORNTON

CLERK

(BY) DEPUTY CLERK

$5-21-07$

DATE